UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SUTURE EXPRESS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 14 cv 4737 |
| | ) | |
| v. | ) | Hon. Andrea R. Wood |
| | ) | |
| CARDINAL HEALTH 200, LLC, and | ) | Case No. 12-2760 pending in the |
| OWENS & MINOR DISTRIBUTION, INC., | ) | United States District Court for |
| | ) | the District of Kansas |
| Defendants. | ) | |

## SUTURE EXPRESS, INC.'S MOTION TO COMPEL

Plaintiff Suture Express, Inc., for reasons stated in its Opposition Memorandum to non-party Medline Industries, Inc.'s Motion to Quash (and Memorandum in Support of its Motion to Compel), seeks to compel the production of subpoenaed documents. In accordance with Local Rule 37.2 counsel state that they have consulted with counsel for non-party Medline Industries, Inc. and made good faith attempts to resolve their differences as follows:

Suture Express and Medline met and conferred regarding the subpoena for nearly two months. Over the course of that period, Suture Express agreed to significantly narrow the subpoena in numerous ways. Among other accommodations, Suture Express changed several requests for "all documents" to requests for documents "sufficient to show"; limited (and then dropped) its request for Medline's contracts with manufacturers; dropped its request for Medline's cost information; and limited its request for Medline's contracts with customers to a request for only a small fraction of Medline's contracts. With respect to its request for transactional data, Suture Express offered to limit its requests to certain data fields to meet any burden concerns. Despite Suture Express's repeated requests, Medline never even produced a list of its data fields to allow Suture Express to narrow these requests. Suture Express also

offered to limit the scope of requests by agreeing to a small set of custodians from whom Medline would collect documents. Suture Express repeatedly asked Medline to propose a list of custodians and/or produce organizational charts. Medline never did so.

Notwithstanding Medline's unwillingness to agree to Suture Express's significantly narrowed requests, Suture Express told Medline on a June 24, 2014 call, before Medline filed the Motion, that it remained open to compromise. Indeed, Medline discussed several areas of possible compromise on that call. In any event, Suture Express has informed Medline that, as a compromise, it would be acceptable for Medline to produce:

- **Contracts (Suture Express Document Requests 3 and 4):** (*i*) All agreements or contracts between Medline and any GPO concerning the sale or distribution of Med-Surg Products (including Suture Products and Endo Products); (*ii*) lists of all customers who purchase Med-Surg Products (including Suture Products and Endo Products) pursuant to a master or global agreement or contract with any GPO (including information about the Customer's GPO affiliation); and (*iii*) a random sample of fifty (50) individual or local agreements or contracts between Medline and any IDN, IHN or Customer concerning the sale or distribution of Med-Surg Products (including Suture Products and Endo Products).
- **Transactional Data (Suture Express Document Requests 17-19):** Transactional sales data for all sales of Sutures Products and Endo Products to Customers for the period January 1, 2006 through present on a monthly basis by customer by product category, including (*a*) the Customer to which the product category was sold; (*b*) any uniform customer identifiers (including DEA Numbers and HIN Numbers) assigned to the Customer; (*c*) any customer identifiers or numbers assigned by any manufacturer to the Customer; (*d*) the product category or classification of the product or products sold;

(*e*) the total amount paid by the Customer to Medline for the product category sold. This is much narrower than the data initially sought in the subpoena (and the data produced by the parties in the litigation), which is transaction-by-transaction data for all Med-Surg products for all customers.

- **Other Relevant Documents (Suture Express Document Requests 7-15):** Emails, electronic files, and paper files responsive to targeted search terms collected from three agreed-upon key Medline custodians, and all responsive, non-privileged documents located therein.

Medline responded to Suture Express's significantly narrowed proposals by expressing—*for the first time*—sensitivity about disclosing the identity of its customers. Medline stated that it believed such information was commercially sensitive and that it would not produce transactional data by customer; would not provide a list of customers who buy pursuant to GPO agreements; and that, if it produced a random sample of locally negotiated agreements, the customer's identity as well as several other contract terms would be redacted.

Suture Express responded by explaining that Medline's stated concerns could be addressed by the protective order entered in the *Suture Express* litigation, which affords a high level of confidentiality to sensitive information produced by third parties in the litigation and protects such sensitive information from disclosure to employees at Suture Express, Cardinal, and Owens & Minor. Instead of continuing to negotiate, Medline pressed ahead with its Motion to Quash.

In light of the Motion to Quash filed by Medline and the substantial good faith attempts at negotiation detailed above, the parties are now effectively at an impasse on the subject matters

3

detailed in Suture Express' Cross-Motion to Compel Discovery.  Further conference would be futile.[1]

Accordingly, Suture Express respectfully requests that the Court deny Medline's Motion to Quash and grant Suture Express's Motion to Compel and order Medline to:

- Comply with Suture Express Document Requests 3 and 4 by producing by August 29, 2014 (*i*) all agreements or contracts between Medline and any GPO concerning the sale or distribution of Med-Surg Products (including Suture Products and Endo Products); (*ii*) lists of all customers who purchase Med-Surg Products (including Suture Products and Endo Products) pursuant to a master or global agreement or contract with any GPO (including information about the Customer's GPO affiliation); and (*iii*) a random sample of fifty (50) individual or local agreements or contracts between Medline and any IDN, IHN or Customer concerning the sale or distribution of Med-Surg Products (including Suture Products and Endo Products);

- Comply with Suture Express Document Requests 7 through 15 (as modified by Plaintiff's April 29, 2014 letter) by searching and reviewing the emails, electronic files and paper files of 3 agreed-upon key Medline custodians and producing by August 29, 2014 all responsive documents located therein;

- Comply with Suture Express  Requests 17 through 19 by producing by August 29, 2014 transactional sales data for all sales of Sutures Products and Endo Products to Customers for the period January 1, 2006 through present on a monthly basis by

---

[1] Suture Express also notes the Court's rules regarding Electronic Discovery Disputes and the requirement to meet and confer with an IT representative to determine the most effective way to retrieve the requested material.  Given the position that Medline took during the meet-and-confer process, consultation with an IT representative of Medline/the electronic storage facility was not possible and would be futile.  Intervention of the Court is now required to advance the dispute beyond its current impasse.


customer by product category, including (*a*) the Customer to which the product category was sold; (*b*) any uniform customer identifiers (including DEA Numbers and HIN Numbers) assigned to the Customer; (*c*) any customer identifiers or numbers assigned by any manufacturer to the Customer; (*d*) the product category or classification of the product or products sold; and (*e*) the total amount paid by the Customer to Medline for the product category sold; and

- Pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, designate for deposition one or more officers, directors, managing agents or other persons to testify on Medline's behalf (on or before September 19, 2014, the close of fact discovery in the underlying case) about the subject matters set forth in the subpoena.

Dated: July 28, 2014

        Respectfully submitted,

        KATTEN & TEMPLE LLP

        By: /s/ Nancy A. Temple
            Nancy A. Temple (IL #6205448)
            Richard B. Kapnick (IL #06183762)
        542 S. Dearborn Street, 14th Floor
        Chicago, IL 60605
        Tel: (312) 663-0800

        DEBEVOISE & PLIMPTON LLP
            Michael Schaper*
            Julie Calderon Rizzo*
        919 Third Avenue
        New York, New York 10022
        Tel: (212) 909-6000
        Fax: (212) 909-6836

        *Attorneys for Plaintiff Suture Express, Inc.*

        *Pro hac vice