UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SUTURE EXPRESS, INC.<br><br>    Plaintiff,<br><br>v.<br><br>CARDINAL HEALTH 200, LLC, AND OWENS & MINOR DISTRIBUTION, INC.<br><br>    Defendants. | 1:14-CV-04737<br><br>Hon. Andrea R. Wood<br><br>Case No. 12-2760 pending in the United States District Court for the District of Kansas |

**DEFENDANTS' BRIEF IN OPPOSITION TO
NON-PARTY MEDLINE INDUSTRIES, INC.'S
MOTION TO QUASH SUBPOENAS ISSUED BY THE PARTIES**

Defendants, Owens & Minor Distribution, Inc. ("Owens & Minor") and Cardinal Health 200, LLC ("Cardinal") (together, "Defendants"), respectfully submit this brief in opposition to Medline Industries, Inc.'s ("Medline") Motion to Quash Subpoenas Issued by the Parties.

**INTRODUCTION**

In its motion, Medline grossly mischaracterizes its negotiations with Defendants and their willingness to meet and confer over the scope of Owens & Minor's subpoena. Defendants have diligently worked in good faith with Medline to further limit the subpoena's requests and any resulting burden. They have sought and obtained amendments to the governing Protective Order to more fully protect confidential information obtained from non-parties like Medline, and have further agreed to limit the exposure of Medline's competitively sensitive information only to the parties' outside counsel. Far from the "unworkable impasse" that Medline claims in its Motion, *see* Dkt. No. 4, Non-Party Medline Industries, Inc.'s Memorandum in Support of Its Motion to Quash Subpoenas Issued by the Parties ("Medline Br.") at 2, counsel for Defendants repeatedly attempted to engage Medline to determine what responsive information Medline possesses that is

1

reasonably accessible in an effort to reach a negotiated resolution of the subpoena's scope. Contrary to Medline's claims that the parties were then "at an impasse on the subject matters of the motion" and that "further conference would be futile," Dkt. No. 1-2, Certificate of Compliance with Local Rule 37.2, ¶ 2, Defendants' discussions with Medline were both productive and ongoing at the time Medline filed its Motion, and have continued since.

As explained below, Defendants seek narrowly tailored categories of data and documents that are highly relevant to their defense of the underlying antitrust lawsuit to which the subpoena relates. Such information, on Medline's sales, customers, and contracting practices, are critical to show that the marketplace at issue is highly competitive and that Defendants' contracting practices are pro-competitive. And, Defendants cannot obtain this information from any other source. As Medline itself acknowledges, as a privately held corporation it does not publicly report information on its profits and finances. Indeed, Medline does not seriously dispute either that the information sought is relevant or that Defendants cannot obtain it from other sources.

Instead, Medline focuses its arguments on burden and confidentiality. But the only specific burdens that Medline identifies to respond to the parties' two separate subpoenas—the need to obtain responsive information from backup tapes or through a search of over a million pages of documents from thousands of employees, and the time and effort to collect thousands of customer contracts—are efforts that Defendants have specifically agreed Medline does not need to undertake to satisfy Owens & Minor's subpoena. Medline's claims of undue burden thus simply do not apply to that subpoena.

On the issue of confidentiality, Defendants acknowledge that the information they seek is by its nature competitively sensitive—as is the information the Defendants have produced to their competitor, Suture Express, and to each other. Such discovery—from parties and non-

parties alike—is standard fare in antitrust lawsuits. That is precisely why there is a strict Protective Order, which shields such information from disclosure to the public and to the parties' employees (other than a single in-house attorney without day-to-day commercial responsibilities). *See* Exhibit A, Third Amended Protective Order, *Suture Express, Inc. v. Cardinal Health 200, et al.*, Dkt. No. 142, 2:12-cv-02760-DDC-KGS (D. Kan. June 24, 2014). In fact, Defendants have agreed to treat any information produced by Medline as outside counsel-eyes only, affording it additional protection beyond that afforded to the parties themselves. And Defendants have offered to consider any additional protections that Medline believes it may need for its information. The bottom line is that the fact that responsive information might be competitively sensitive provides no basis for Medline to circumvent its obligations to comply with Owens & Minor's subpoena.

Owens & Minor's subpoena to Medline calls for highly relevant information, and Medline has articulated no legitimate undue burdens it would experience to respond. Accordingly, Defendants request that the Court deny Medline's motion to quash and order Medline to produce: (1) all data requested in the subpoena that resides on Medline's live database; (2) all of Medline's current and other reasonably accessible contracts with Group Purchasing Organizations ("GPOs") and a random sample of contracts with acute care providers, including but not limited to integrated delivery networks, integrated healthcare networks, and individual hospitals or hospital systems; (3) strategic plans, business plans and board presentations, agendas and minutes; (4) for each of the other document requests, responsive documents contained in (a) any central files or databases and (b) the files of two to three

custodians most likely to have documents responsive to each such request; and (5) a witness to testify on Medline's behalf about the deposition topics in Owen's & Minor's subpoena.[1]

## BACKGROUND

Owens & Minor and Cardinal are broad-based distributors of medical and surgical ("med-surg") products. Defendants distribute med-surg products to acute and non-acute care customers. Acute care customers include hospitals and hospital systems. Non-acute care customers include facilities like physicians' offices and ambulatory surgery centers. Medline is also a broad-based distributor of med-surg products. Suture Express, Inc. ("Suture Express"), the Plaintiff in the underlying litigation, is a specialty distributor, focused on selling sutures and endomechanical devices ("endo") and only a limited number of other med-surg products.

### I.     THE DISTRICT OF KANSAS LAWSUIT

Suture Express initiated the underlying seven-count antitrust lawsuit in the District of Kansas against Owens & Minor and Cardinal on December 5, 2012. After the Kansas district court's decision on Defendants' motions to dismiss, only the counts alleging tying and exclusive dealing remained. *Suture Express, Inc. v. Cardinal Health 200, LLC*, 963 F. Supp. 2d 1212, 1231 (D. Kan. 2013). Suture Express alleges that Defendants have violated the antitrust laws by preventing customers from purchasing suture and endo products from Suture Express by requiring customers to purchase suture and endo from Defendants to receive certain discounts on all of their med-surg products. Suture Express alleges that these discounts are designed to

---

[1] Medline does not articulate *any* specific burden it would incur to produce a witness to testify on the deposition topics in Owens & Minor's subpoena, or even mention the deposition in its motion. Throughout the meet and confer process, Medline's counsel never raised any concern about producing a witness to testify about the deposition topics, and in fact, stated that certain of the document requests could best be satisfied through its witness.

prevent customers from purchasing from Suture Express, thereby excluding Suture Express from the market.

## II. MEDLINE SUBPOENA

On April 11, 2014, Owens & Minor served a subpoena for documents and deposition testimony on Medline, seeking information relevant to both Defendants' defenses. The subpoena requested information regarding Medline's sales data, contracting practices, business strategy, relationships with customers, and overall competitive standing for the distribution of med-surg products. The information requested in Owens & Minor's subpoena is relevant and necessary to provide a more complete picture of the competitive landscape for med-surg product distribution and for Defendants to defend against Suture Express's allegations. In addition to crafting a targeted subpoena, Defendants have actively engaged with Medline in an effort to understand what information is readily available and to alleviate any burdens associated with responding to the greatest extent possible.

## III. MEET AND CONFER

Medline's motion bears no resemblance to the reality of its negotiations with Defendants. It attempts to conflate Defendants' and Suture Express's separate efforts to meet and confer with Medline over the scope of their respective subpoenas. Tellingly, however, Medline's description of the meet and confer process details only its discussions with Suture Express, and Suture Express's purported unwillingness to compromise adequately. Medline Br. at 5-6. That's because Defendants' counsel repeatedly expressed their willingness during multiple meet and confers to narrow their requests and ameliorate any burden to Medline, and offered several concrete ways in which to significantly narrow the subpoena and Medline's response. Before Medline filed its motion to quash, counsel for Defendants spoke with Medline's counsel on three

occasions and have spoken since on three additional occasions. Exhibit B, Declaration of Shari Ross Lahlou ("Lahlou Decl."), at ¶ 4. Since the very first meeting, Defendants have made it clear to Medline that they hoped to reach a mutually agreeable resolution and to work with Medline to reduce any burdens that it identified to the greatest extent possible. *Id.* at ¶ 5. First, with respect to Medline's sales data, Defendants explained that they were not seeking any data located on backup tapes and sought only monthly data, as opposed to the transaction-level data requested by Suture Express. *Id.* at ¶ 7. Defendants also expressed their willingness to modify their data request if the monthly data were too difficult to compile, but Medline never provided information on the burden in pulling the data, or otherwise responded to this offer. *Id.*

Defendants have also expressed a willingness to agree to a more limited production of customer contracts, proposing that Medline produce all contracts with GPOs and a random sample of its customer contracts. *Id.* at ¶ 8. Medline has not responded to this proposal either. *Id.*

With respect to the remaining document requests, Defendants have proposed several ways to limit any burden to Medline. Defendants have suggested, for example, that centrally located files may contain sufficient information to satisfy certain requests, and expressed a willingness to limit the number of custodians and searches Medline would run to locate responsive documents. *Id.* at ¶ 9. Again, Medline has provided no concrete response, nor has it otherwise meaningfully demonstrated a willingness to resolve the issues through the meet and confer process. *Id.*

Finally, Defendants have attempted to address Medline's confidentiality concerns. *Id.* at ¶¶ 10-12. At the parties' request, the Kansas district court amended the Protective Order to explicitly allow for the designation of non-party documents as "Highly Confidential," and

6

Defendants further agreed that the documents provided by Medline will only be viewed by the parties' outside counsel. *Id.* at ¶ 12. In addition to these efforts to further protect Medline's competitively sensitive information, Defendants have expressed a willingness to agree to additional stipulations as necessary to allay Medline's concerns about the use and disclosure of its information at or before trial. Medline has not engaged with Defendants in response to these offers to compromise. *Id.*

## LEGAL STANDARD

Under Rule 45, "[a] party has a general right to subpoena any person to appear at a deposition or to produce documents for inspection and copying." *Thayer v. Chiczewski*, 257 F.R.D. 466, 469 (N.D. Ill. 2009). Although a subpoena obligates the recipient to respond, a court may quash or modify a subpoena upon a showing that it subjects the recipient to an *undue* burden. *See id*. In making that determination, courts consider several factors, including "'the person's status as a non-party, the relevance of the discovery sought, the subpoenaing party's need for the documents, the breadth of the request and the burden imposed on the subpoenaed party.'" *Parker v. Four Seasons Hotels, Ltd.*, 291 F.R.D. 181, 188 (N.D. Ill. 2013) (quoting *Last Atlantis Capital, LLC v. AGS Specialist Partners*, No. 04 C 0397, 2013 WL 182792, at *1 (N.D. Ill. Jan. 17, 2013)). As explained below, Medline has failed to carry its burden of demonstrating that the Owens & Minor subpoena should be quashed.

## ARGUMENT

**I.  THE CONFIDENTIAL INFORMATION SOUGHT BY DEFENDANTS IS BOTH RELEVANT AND NECESSARY.**

The information sought by Owens & Minor's subpoena to Medline is unquestionably relevant to the central issues in the underlying litigation and readily satisfies the criteria for permissible non-party discovery in an antitrust action. *See Greater Rockford Energy and Tech.*

*Corp. v. Shell Oil Co.*, 138 F.R.D. 530, 534 (C.D. Ill. 1991) (relevant information encompasses "any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case"). While a stronger showing of relevance is generally required when seeking documents from a non-party, that rule "is counterbalanced by the 'general policy of allowing liberal discovery in antitrust cases.'" *In re Mushroom Direct Purchaser Antitrust Litig.*, No. 06-0620, 2012 WL 298480, *4 (E.D. Pa. Jan 31, 2012).

In any event, the information Defendants seek goes to the heart of the dispositive issue in the underlying litigation. Lahlou Decl. at ¶¶ 13-16. In that case, Plaintiff's claims rest heavily on the extent to which Defendants have the market power to coerce purchasers of med-surg products. That issue directly implicates the competitive state of the marketplace, and other players', such as Medline's, business practices.

Indeed, Medline, as "the largest privately held manufacturer and distributor of healthcare supplies in the United States" with "billions of dollars in sales," Dkt. No. 4-1, Affidavit of William J. Abrams ("Abrams Affidavit") at ¶ 2, is an important part of the competitive landscape for med-surg product distribution. Like the non-party subpoena recipient in *In re Mushroom Direct Purchaser Antitrust Litigation*, Medline is a non-party that participates in the relevant market and the information Defendants seek "is clearly relevant in that it either directly pertains to or may lead to information that supports or refutes plaintiff['s] claims regarding the impact of the defendants' activities." 2012 WL 298480, at *5.

Information in Medline's possession about its market share, growth, and ability to compete is highly relevant to determining whether or not Defendants have the market power necessary to coerce customers to accept unwanted contract provisions or engage in anticompetitive tying. Lahlou Decl. at ¶ 14. Medline's own motion and supporting affidavit

8

demonstrate that it possesses information about the "fiercely" competitive nature of med-surg distribution that is highly relevant to Defendants' defense—but before Defendants could introduce that information in the form of admissible evidence they first must obtain it from Medline. For example, Medline argues that "[t]he sales of Med-Surg products to hospitals is a highly competitive business and oftentimes customers pick suppliers (such as Medline) because their costs are lower than the competition by only a few cents." Medline Br. at 9. Medline contends that it "has a significant amount of overlapping customers with O&M and Cardinal" and "also competes directly" with Suture Express. Abrams Affidavit at ¶ 7. It further contends that "competition between Medline [and] the parties to this case is fierce" [sic]. *Id.* Medline's documents and data supporting its contentions are not only relevant, but go to the heart of the analysis that is at the center of the underlying litigation. Medline's pricing and contracting practices are equally relevant and necessary for Defendants' defense of Suture Express's lawsuit. To the extent a significant competitor like Medline engages in similar contracting practices, that could indicate that those practices reflect efficiencies in the distribution of med-surg products and enable distributors to offer customers the best prices while maintaining distributors' profitability. Lahlou Decl. at ¶ 15. And, to the extent competitors like Medline do not offer the same kinds of pricing and contract terms, then they represent another choice for customers in the marketplace, which equally undermines Suture Express's claims. The information Defendants seek from Medline is highly relevant and necessary to their defense.

And that information cannot be obtained from any other source, necessitating Owens & Minor's subpoena to Medline. For example, the fact that "Medline has a significant amount of overlapping customers with O&M and Cardinal," Abrams Affidavit at ¶ 7, indicates that customers have choices of distributors from which to obtain their med-surg products and thus

9

cannot be coerced to buy from Defendants. But Defendants cannot determine which customers or how many "overlap" with Medline's based only on the parties' data, because Medline's own information must necessarily be combined with the parties' data to allow them to do so. As Medline states in its motion and supporting affidavit, Medline is a private company and thus does not publicly disclose or report information on its profits and finances like public companies do. *See* Medline Br. at 8; Abrams Affidavit at ¶ 19. Nor, as a practical matter, could Defendants obtain the requested information on Medline's sales, prices, products, and contracts directly from Medline's customers. *See* Lahlou Decl. at ¶ 17. As Medline itself explains, it has "approximately 30,000 contracts regarding the sale or distribution of Med-Surg products" with "tens of thousands of customers." Abrams Affidavit at ¶¶ 10, 12. These customers, like Medline, are not parties to Suture Express's lawsuit. *See* Medline Br. at 12 (discussing the significance of non-party status in assessing the burden of responding to a subpoena). Obtaining such information through subpoenas issued to individual customers would impose a far greater burden on those customers, the parties, and the issuing courts than Owens & Minor's targeted subpoena of Medline.

Courts have recognized the need in antitrust cases for parties to obtain discovery from significant competitors. *See*, *e.g*., *Columbus Drywall & Insulation, Inc. v. Masco Corp.*, No. 2:06-MC-0034, 2006 WL 2871834, *2 (S.D. Ohio Sept. 25, 2006) (finding that the subpoena was enforceable because, in an antitrust case, "information from a non-party participant in the market may, from a tactical standpoint, present advantages in the litigation not easily realized from parties or experts"); *Covey Oil Co. v. Cont'l Oil Co.*, 340 F.2d 993, 997-99 (10th Cir. 1965) (upholding enforcement of subpoenas to non-party competitors where the evidence sought had "substantial value because it is relevant and vital to the defenses asserted," and where the trial

court "imposed conditions designed to protect" non-parties by restricting availability of documents to counsel and independent accountants and only for purposes of the case and "[t]he right to further protective orders upon an appropriate showing was specifically recognized"). *See also R.J. Reynolds Tobacco v. Philip Morris, Inc.*, 29 Fed. Appx. 880, 881-82 (3d Cir. 2002) (unpublished) (affirming order enforcing subpoena on non-party retailer in an antitrust lawsuit requiring disclosure of trade secrets because the information requested "plainly relate[d]" to underlying antitrust claims, and recipient had not presented a sufficient showing of harm in light of protective order under which disclosure would be made). Like in *Columbus Drywall*, the discovery sought from Medline is necessary and Defendants are unable to obtain this information from other sources.

In a half-hearted attempt to nonetheless challenge the relevance and necessity of the information sought by Owens & Minor's subpoena, Medline cites just one case. But that case has no bearing here. In *Spartanburg Regional Healthcare System v. Hillenbrand Industries, Inc.*, the defendant submitted an extensive subpoena and claimed only that the documents were necessary to demonstrate competition in the marketplace. No. 1:05-MC-107, 2005 WL 2045818, *4 (W.D. Mich. Aug. 24, 2005). The court in *Spartanburg* found that the defendant failed to demonstrate why information on the non-party's internal "thought processes" regarding its pricing and product development was necessary to simply establish that competition existed. *Id*. The court in that case did not hold that competitor information is never relevant in an antitrust case and, in fact, recognized that "factual information" regarding the relevant market may be relevant. *See id.* Here, Defendants do not seek information from Medline "based on a mere 'possibility that [they] may find something therein." Medline Br. at 10 (citing *Nw. Mem'l Hosp.*

11

*v. Ashcroft*, 362 F.3d 923, 927 (7th Cir. 2004)). To the contrary, the sought information is facially highly relevant, as Medline itself implicitly acknowledges.

Defendants took care to craft a subpoena that requested only the most critical information and were willing to make further concessions to reach a compromise with Medline. During the meet and confers, Defendants discussed with Medline why the requested documents and other information was relevant and at no point during these discussions did Medline question the relevance or necessity of the core information requested by Defendants. Lahlou Decl. at ¶ 18.

## II. MEDLINE HAS FAILED TO ESTABLISH UNDUE BURDEN.

With the relevance established (and essentially conceded), Medline bears the burden to establish that the subpoena will subject it to an undue burden. *See Pac. Century Int'l, Ltd. v. Does 1-37*, 282 F.R.D. 189, 193 (N.D. Ill. 2012) (citing *Williams v. Blagojevich*, No. 05 C 4673, 2008 WL 68680, *3 (N.D. Ill. Jan. 2, 2008) ("The party opposing discovery has the burden of showing the discovery is overly broad, unduly burdensome, or not relevant.")). In arguing that the burden of responding to the parties' subpoenas would be undue, Medline raises two specific concerns: (1) the burden of accessing backup tapes to obtain customer and pricing information and (2) the need to review over one million pages of documents. Medline Br. at 11-14. But in their discussions with Medline's counsel about Owens & Minor's subpoena, Defendants made absolutely clear that they do not expect Medline to engage in *either* of those activities. Instead, Defendants have diligently attempted to work with Medline to understand any possible burden that Medline might face in responding to the subpoena, and to narrow the scope of the requests to address any such burdens. Lahlou Decl. at ¶¶ 5-8.

In addition to repeated assurances that Defendants are willing to work with Medline, Defendants have made specific offers to narrow the requests outlined in Owens & Minor's subpoena. First, Defendants have affirmatively stated that they do not expect Medline to recover

12

any data from backup tapes. *Id*. at ¶ 7. Defendants have requested only that Medline run monthly reports of customer sales from any data that is stored in their live system. *Id*. Despite Defendants' request to understand the potential burden associated with producing live data, Medline has provided no specific information regarding any burden involved in retrieving this information.

Medline also argues that locating documents for the entire time period would require it to search through over one million pages of documents. Again, Defendants have made clear they do not expect Medline to run exhaustive searches over all of its employees in an attempt to locate documents responsive to the subpoena. *Id*. at ¶¶ 8-9. Defendants have asked Medline on numerous occasions to identify some documents, like business plans or board presentations, that might satisfy multiple requests and could be readily collected on a "go get" basis, rather than requiring an exhaustive search of documents held by numerous custodians. *Id*. at ¶ 9. Medline, however, has not responded to those inquiries and has not articulated how locating and retrieving such documents would be unduly burdensome. Defendants have also asked Medline to determine whether there are a small number of custodians "most likely" to have responsive information for a given request. Again, however, Medline has never responded to that inquiry.

Finally, Medline's supporting affidavit states that "[c]ollecting the volume of contracts that the parties request" would require months of work by Medline employees. Abrams Affidavit at ¶ 12. Yet, here too, Defendants proposed a compromise that would alleviate the claimed burden, expressing a willingness to accept only Medline's contracts with GPOs and a representative sample of its customer contracts. Lahlou Decl. at ¶ 8. When Medline's counsel expressed a concern about the burden of identifying "representative" contracts, Defendants

13

expressed a willingness to accept a *random* sample of Medline's customer contracts to further alleviate any burden to Medline. *Id*.

Given Defendants' expressed willingness to allow Medline to satisfy Owens & Minor's subpoena without undertaking the only efforts that Medline argues would be unduly burdensome, Medline has failed to establish that responding to Owens & Minor's subpoena will subject it to undue burden.

### III. THE PROTECTIVE ORDER IS ADEQUATE TO PROTECT MEDLINE'S INTERESTS AND DEFENDANTS ARE WILLING TO STIPULATE TO ADDITIONAL PROTECTIONS IF NECESSARY.

Medline's final argument rests on the adequacy of the protections available to shield its competitively sensitive information from its competitors. The Kansas district court has issued a Protective Order in the underlying litigation that allows for all contracts, pricing, business plans, strategies, and forecasts to be designated as "Highly Confidential." *See* Exhibit A, at 2. Even though the "Highly Confidential" designation allows for one in-house counsel at each party to view the documents, Defendants have agreed to maintain all Medline documents on an outside counsel-only basis. Lahlou Decl. at ¶ 12. Defendants have also indicated a willingness to discuss additional stipulations to provide further protections as necessary, but Medline has not engaged in any discussions with Defendants regarding such additional protections.

The Protective Order, coupled with Defendants' agreement to outside counsel-eyes only treatment of Medline's documents, provides adequate protection for its competitively sensitive information. Even in cases involving competitors, courts have held that a protective order "addressing confidential matters" is "adequate to preserve [the non-party's] interest in maintaining its proprietary . . . information." *Columbus Drywall*, 2006 WL 2871834, at *2; *see also In re Mushroom Direct Purchaser*, 2012 WL 298480, at *6 (finding the protective order "sufficient to protect discovery of confidential business information" because it allowed for

"Confidential," "Highly Confidential," and "Highly Confidential – For Attorney's Eyes Only" designations); *Med. Tech. Inc. v. Breg, Inc.*, No 10-mc-00100, 2010 WL 3734719, *5 (E.D. Pa. Sept. 21, 2010) (upholding a subpoena where the requested highly confidential information was covered under a protective order).[2] Medline's only arguments about the irreparable harm that it claims it will suffer by producing competitively sensitive information presume, with no basis, that the parties' outside counsel will violate the Protective Order and share Medline's information with the parties' employees. *See* Medline Br. at 8-10. Finally, Medline points to no authority that the Protective Order is somehow less adequate to protect a privately held company or that such a company is any less obligated to respond to a subpoena than any other person. *See id.* at 9.[3]

---

[2] The Protective Order in this case, particularly with the further protections agreed to by the parties for Medline's information, is thus significantly more protective than the protective order at issue in *Stanley Works v. Newell Co.*, No. 92 C 20157, 1992 WL 229652, *6 (N.D. Ill. Aug. 27, 1992), which allowed disclosure of even "Highly Confidential" documents to "officers, directors, and employees of a party upon notice and a hearing." Medline's argument that the parties' experts may use "at a later time" Medline's information to its "detriment when this case is over," Medline Br. at 14, is similarly insufficient to support its motion. First, the argument relies on the premise that independent experts would violate the terms of the Protective Order—a premise that is at best highly speculative. *See SDT Indus., Inc. v. Pennington Seed, Inc.*, No. 10-0014, 2010 WL 2024735, *6 (W.D. La. May 18, 2010) (recognizing that any experts receiving confidential information would have to execute a declaration which bound them to the provisions of an applicable protective order, and absent "any cognizable basis to establish the inadequacy of the existing" protective order, found that it "sufficiently protect[ed]" the subpoena recipient's interests). Second, Defendants' "strong showing of need" overcomes any such concern. *See Greater Rockford Energy & Tech. Corp. v. Shell Oil Co.*, 138 F.R.D. 530, 538 (C.D. Ill. 1991) (citation omitted).

[3] Because the Defendants have proposed specific compromises that would alleviate the specific burdens that Medline claims it would incur, and because Medline has failed to articulate why compliance with Owens & Minor's subpoena would otherwise cause it any undue burden, no basis exists to shift the cost of complying with that subpoena to Defendants.

**CONCLUSION**

For the foregoing reasons, Defendants request that this Court enforce the subpoena issued to Medline on April 11, 2014. Specifically, Defendants request this Court to order Medline to produce: (1) all data requested in the subpoena that resides on Medline's live database; (2) all of Medline's current and other reasonably accessible contracts with Group Purchasing Organizations ("GPOs") and a random sample of contracts with acute care providers; (3) strategic plans, business plans and board presentations, agendas and minutes; (4) for each of the subpoena's other document requests, responsive documents contained in (a) any central files or databases and (b) the files of a two to three custodians most likely to have documents responsive to each such request; and (5) a witness to testify on Medline's behalf about the deposition topics in Owen's & Minor's subpoena.

DATE: July 28, 2014

Respectfully submitted,

/s/ Corey M. Shapiro
Corey M. Shapiro
Dentons US LLP
233 South Wacker Drive
Suite 7800
Chicago, IL  60606
Telephone: (312) 876-3461
corey.shapiro@dentons.com

Shari Ross Lahlou
Luke van Houwelingen
CROWELL & MORING LLP
1001 Pennsylvania Avenue, NW
Washington, DC  20004
Telephone: (202) 624-2500
Facsimile: (202) 624-5116
slahlou@crowell.com
lvanhouwelingen@crowell.com

*Attorneys for Defendant Owens & Minor Distribution, Inc.*

/s/ Yael D. Aufgang
Michael Sennett
Paula W. Render
Eric P. Berlin
Yael D. Aufgang
JONES DAY
77 West Wacker Dr.
Chicago, IL 60601-1691
Telephone: (312) 782-3939
Facsimile: (312) 782-8585
msennett@jonesday.com
prender@jonesday.com
epberlin@jonesday.com
yaufgang@jonesday.com

Michelle K. Fischer
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114 1190
Telephone: (216) 586-7096
Facsimile: (216) 579-0212
mfischer@jonesday.com

*Attorneys for Defendant Cardinal Health 200, LLC*

## **CERTIFICATE OF SERVICE**

      I, Corey M. Shapiro, certify that on July 28, 2014, I caused a true and correct copy of the foregoing to be filed with the Clerk of the Court using the CM/ECF system, which will send notice of the electronic filing to counsel for all parties.

                                                  /s/ Corey M. Shapiro_____

                                                  Corey M. Shapiro