**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| SUTURE EXPRESS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 14-cv-04737 |
| v. | ) | |
| | ) | Judge Andrea R. Wood |
| CARDINAL HEALTH 200, LLC and | ) | |
| OWENS & MINOR DISTRIBUTION, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

This Court has been asked to determine whether Medline Industries, Inc. ("Medline")
should be required to produce confidential, commercially-sensitive information regarding its
business to three of its competitors for use in litigation to which it is not a party. Owens & Minor
Distribution, Inc. ("O&M") and Cardinal Health 200, LLC ("Cardinal," and together with O&M,
"Defendants") are defendants in an antitrust lawsuit filed by Suture Express, Inc. ("Suture
Express," and together with the Defendants, the "Parties") pending in the United States District
Court for the District of Kansas ("Underlying Litigation").[1] Suture Express, O&M, and Cardinal
all compete in the market for medical and surgical single-use items, also known as the "med-
surg" market. Medline also competes in the med-surg field, but it is not a party in the Underlying
Litigation. During discovery in the Underlying Litigation, Suture Express and the Defendants
issued subpoenas to Medline pursuant to Federal Rule of Civil Procedure 45, seeking the

---

[1] The Parties' subpoenas were issued from this Court because Medline is located in the Northern District
of Illinois. *See* Fed. R. Civ. P. 45(a)(2). Consequently, the pending motions were filed in this Court rather
than in the District of Kansas. *See* Fed. R. Civ. P. 45(c)(3)(A).

production of documents and deposition testimony.[2] Medline has objected to disclosing the requested information and, accordingly, has filed the instant motion to quash the subpoenas ("Motion to Quash"). (Dkt. No. 1.) In response, Suture Express has filed a cross-motion to compel Medline to comply with its subpoena ("Motion to Compel"). (Dkt. No. 16.) Both motions are now ripe for decision. For the reasons stated below, the Court grants in part and denies in part the Motion to Quash and the Motion to Compel.

## BACKGROUND

### I.     The Underlying Litigation

Suture Express is engaged in the business of selling and distributing sutures and endomechanical products (also known as "endo products"), which are devices used in minimally invasive surgeries, such as laparoscopic surgery. According to the complaint in the Underlying Litigation, sutures and endo products comprise a sub-set of a 10% segment of the med-surg supply market that also includes items such as needles, syringes, gloves, surgical instruments, and catheters. While Suture Express has limited its business to a portion of the med-surg category, O&M and Cardinal are broad-based distributors that purchase and distribute the full range of med-surg products.

In December 2012, Suture Express filed a seven-count complaint against the Defendants in the District of Kansas, alleging causes of action under the Sherman Antitrust Act, 15 U.S.C. § 1 *et seq.*, the Clayton Antitrust Act, 15 U.S.C. § 12 *et seq.*, and Kansas state law.[3] The complaint alleges that O&M and Cardinal control 39% and 33%, respectively, of the total med-

---

[2] Although the Defendants' subpoena was issued by O&M, it represents the joint effort of O&M and Cardinal.

[3] Suture Express subsequently filed an amended complaint that pleaded the same causes of action. For the remainder of this Memorandum Opinion and Order, references to the "complaint" are to the amended complaint.

surg market. Suture Express further alleges that, beginning in 2008, the Defendants leveraged

their market power in order to coerce customers to purchase the Defendants' sutures and endo

products. According to Suture Express, the Defendants required their customers to purchase 90%

or more of their sutures and endo products from one of the Defendants, or else the customers

would pay a penalty on the entire med-surg basket purchased from that Defendant. Suture

Express further contends that the amount of the "discount" offered by the Defendants was such

as to bring the price of their sutures and endo products below cost, and thus constituted predatory

pricing that enhanced the Defendants' market power, raised barriers to entry, and impeded the

ability of Suture Express to compete.

In response to the complaint, the Defendants filed a motion to dismiss, which the district

court granted in part. As a result, the Underlying Litigation now consists of three live causes of

action: Count 1, claiming that the Defendants violated § 1 of the Sherman Act by engaging in

illegal tying practices; Count 5, alleging that the Defendants violated § 3 of the Clayton Act by

engaging in exclusive dealing; and Count 6, asserting that the Defendants violated the Kansas

Restraint of Trade Act ("KRTA"), K.S.A. 50-101 *et seq.*, based on anti-competitive tying and

bundling.

The district court also entered a protective order for discovery in the Underlying

Litigation (the "Protective Order") that limits dissemination of and public access to "information

that the producing party or non-party . . . designates as 'Confidential' or 'Highly Confidential.'"

(Defs.' Resp. Ex. A ¶ 3, Dkt. No. 21-1.) The Protective Order permits a broad range of

information to be designated as "Confidential" or "Highly Confidential," including the contracts,

transactional data, and confidential business information that are at issue in the Underlying

Litigation. (*Id.*) The Protective Order also provides that "[a]ll information produced or

discovered in th[e] Litigation, regardless of whether designated confidential, shall be used solely for the prosecution or defense of this Litigation." (*Id.* at ¶ 1.) Under the terms of the Protective Order, "Highly Confidential" information cannot be disclosed to any employee of the Parties except, "for each Defendant, one in-house counsel who does not play any significant role in the respective Defendant's commercial decisions." (*Id.* at ¶ 10(B)(2).) However, the Parties may disclose "Highly Confidential" information to their consulting and testifying experts, so long as those experts sign an agreement under which they promise to abide by the terms of the Protective Order and acknowledge that they may be held in contempt if they violate those terms. (*Id.* at ¶¶ 10(B)(7), 11 & Ex. A.) The Protective Order also expressly states that it does not cover the use of confidential discovery material at any trial or hearing in the Underlying Litigation, leaving that issue to be addressed in the final pre-trial order. (*Id.* at ¶ 14(A).)

## II.     The Medline Subpoenas

On March 28, 2014, Suture Express served a subpoena on Medline, which, like Cardinal and O&M, is a broad-line distributor of med-surg supplies. (Mot. to Quash Ex. 1, Dkt. No. 1-3.) Medline competes directly with the Parties in the med-surg market. Suture Express's subpoena asks for nineteen categories of documents, as well as a deposition pursuant to Federal Rule of Civil Procedure 30(b)(6). On April 11, 2014, O&M served a subpoena on behalf of the Defendants asking for fifteen categories of documents and a Rule 30(b)(6) deposition. (Mot. to Quash Ex. 2, Dkt. No. 1-4.) Both subpoenas demand responsive documents for the time period January 1, 2006 through the present. Medline timely objected to these document requests on the basis of, among other things, relevance, confidentiality, and undue burden.

The Parties' subpoenas request information that, broadly speaking, can be grouped into the following categories:

- information relating to Medline's customers, sales, profits, and market share (Defendants' document requests 1, 4, 5, 6, 7, 8, 9, 10, 11, and 12, and deposition topics 2 and 5; Suture Express's document requests 12, 17, 18, and 19, and deposition topic 3);

- information relating to Medline's general contracts and pricing practices (Defendants' document request 2; Suture Express's document requests 3, 4, and 7, and deposition topics 1 and 2);

- information relating to Medline's "tying" of certain products to the sale of other products through price concessions, rebates, and the like (Defendants' document request 3 and deposition topics 3 and 4; Suture Express's document requests 8, 9, 10, 11, 13, and 15, and deposition topics 4, 5, and 6); and

- information relating to Medline's communications with and about its competitors, including the Parties (Defendants' document requests 13, 14, and 15, and deposition topic 1; Suture Express's document request 14 and deposition topics 7 and 8).

The Parties and Medline subsequently engaged in a robust meet and confer process, during which the Parties offered certain concessions in response to Medline's objections. For example, the Defendants offered to agree that Medline may limit its production of customer contracts to those between Medline and group purchasing organizations ("GPOs") along with a random sample of Medline's customer contracts. (Lahlou Decl. ¶ 8, Dkt. No. 21-2.) The Defendants also suggested that Medline's search for responsive documents may be limited to centrally-located files, as well as a limited number of custodians. (*Id.* at ¶ 9.) For its part, Suture Express offered to modify several requests for "all documents" to seek only documents "sufficient to show," drop its request for Medline's contracts with manufacturers,[4] drop its request for Medline's cost information, and limit its request for Medline's contracts with customers. (*See generally* Apr. 29, 2014 Ltr., Dkt. No. 18-8.) Additionally, the Parties offered to allow Medline to designate any of the documents it produced pursuant to the subpoenas as "Highly Confidential" under the Protective Order. (*See id.*; Lahlou Decl. ¶ 10, Dkt. No. 21-2.)

---

[4] Suture Express ultimately dropped its document requests 1, 2, 5, 6, and 16. (*See* Mem. in Supp. of Mot. to Compel at 4-6, Dkt. No. 18.) Accordingly, the Court denies as moot the Motion to Quash and the Motion to Compel with respect to those requests.

The Parties failed to reach any accommodation with Medline over the course of the meet and confer process, however.

On June 24, 2014, Medline filed its Motion to Quash, asking this Court to quash the Parties' subpoenas in their entireties and to award it costs. (Dkt. No. 1.) The Parties all opposed the Motion to Quash, and Suture Express also filed its own Motion to Compel, which was briefed concurrently with the Motion to Quash. (Dkt. No. 16.)[5] The Motion to Compel asks the Court to order Medline to produce the documents requested by Suture's subpoena, as limited according to the terms offered by Suture Express during the meet and confer process.

## DISCUSSION

### I.    Legal Standard

Under Federal Rule of Civil Procedure 45, "[a] party has a general right to subpoena any person to appear at a deposition or to produce documents for inspection and copying." *Thayer v. Chiczewski*, 257 F.R.D. 466, 469 (N.D. Ill. 2009). Nonetheless, Rule 45 also protects non-parties by giving courts discretion to quash subpoenas that seek disclosure of confidential research, development, or commercial information, and further mandates that courts quash subpoenas that subject the recipients to undue burden. *See* Fed. R. Civ. P. 45(c)(3)(B)(i), (d)(3)(A)(iv).

When a person seeks protection from a subpoena, a court "must apply a balancing test to determine whether the need of the party seeking disclosure outweighs the adverse effect such disclosure would have on the policies underlying the [claimed] privilege." *Deitchman v. E.R. Squibb & Sons, Inc.,* 740 F.2d 556, 559 (7th Cir. 1984) (quoting *Equal Emp't Opportunity*

---

[5] Medline has also moved to strike certain paragraphs of a declaration filed in support of the Defendants' opposition to the Motion to Quash ("Motion to Strike"). (Dkt. No. 26.) In the Motion to Strike, Medline argues that the paragraphs at issue contain legal opinions inappropriate for such a declaration. Motions to strike generally are strongly disfavored. *See Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir. 1989). In this case, the Court finds it unnecessary to consider the offending paragraphs in order to resolve the Motion to Quash. Accordingly, the Motion to Strike is denied as moot.

*Comm'n v. Univ. of Notre Dame du Lac*, 715 F.2d 331, 338 (7th Cir. 1983)). In applying the balancing test, courts consider several factors, including "the person's status as a non-party, the relevance of the discovery sought, the subpoenaing party's need for the documents, the breadth of the request and the burden imposed on the subpoenaed party." *Parker v. Four Seasons Hotels, Ltd.*, 291 F.R.D. 181, 188 (N.D. Ill. 2013) (quoting *Last Atlantis Capital, LLC v. AGS Specialist Partners*, No. 04 C 0397, 2013 WL 182792, at *1 (N.D. Ill. Jan. 17, 2013)). If confidential information is being sought, "the burden is on the party seeking discovery to establish that the information is sufficiently relevant and necessary to his case to outweigh the harm disclosure would cause to the person from whom he is seeking the information." *Concord Boat Corp. v. Brunswick Corp.*, No. 96 C 6026, 1996 WL 705260, at *3 (N.D. Ill. Dec. 4, 1996) (quoting *The Stanley Works v. Newell Co.*, No. 92 C 20157, 1992 WL 229652, at *2 (N.D. Ill. Aug. 27, 1992)).

Here, the subpoenas issued by the Parties both ask Medline to produce confidential information of the most sensitive kind. Medline, a privately-held company, does not publicly disclose any of the requested information regarding its financial matters. (Abrams Aff. ¶ 19, Dkt. No. 4-1.) Indeed, it is uncontested that Medline maintains strict confidentiality over the requested information, going so far as to restrict even Medline employees from accessing and using it. (*Id.* ¶¶ 6, 10, 14, 19, 23.) Thus, the burden is on the Parties to establish that the information they seek is sufficiently relevant and necessary to the Underlying Litigation to outweigh the potential harm that disclosure would cause Medline.

## II. Specific Categories of Information Requested

Before proceeding to the specific categories of information being sought by the Parties, a couple of points bear noting. First, although somewhat unclear from the briefing, Medline and

the Parties clarified at oral argument that Medline seeks to quash both the requests for documents and the requests for deposition testimony in their entireties. Thus far, Medline has not produced any documents in response to either subpoena and, unless otherwise ordered by the Court, does not intend to provide deposition testimony regarding any of the requested Rule 30(b)(6) topics. For its Motion to Compel, however, Suture has limited its demands based on the concessions it offered during the meet and confer process. Second, for the most part, Medline and the Parties did not address the arguments for and against compelling production on a request-by-request basis in their briefs, instead relying on general arguments. Thus, the grouping of document requests and deposition topics that follows was undertaken by the Court for ease of reference.

### A. Documents and Information Relating to Medline's Customers, Sales, Profits, and Market Share

The Parties have subpoenaed Medline for information relating to its customer communications, pricing, sales, and profits. The Parties contend that they need this information so that they can determine Medline's market share and analyze its impact on the market power of its competitors. In response, Medline claims that revealing specific information relating to its pricing and customers will cause it irreparable harm by potentially allowing the Parties to underbid Medline in future negotiations with customers. However, Medline also acknowledged during oral argument that it could provide aggregate sales information, which would be less burdensome and carry less risk of harm.

This Court agrees with the Parties that information regarding Medline's market share is at least somewhat relevant to the Underlying Litigation. Suture Express asserts a Sherman Act claim against the Defendants based on illegal tying. Under Tenth Circuit precedent, a tying arrangement exists if: "(1) two separate products or services are involved; (2) the sale or agreement to sell one product or service is conditioned on the purchase of another; (3) the seller

has sufficient economic power in the tying product market to enable it to restrain trade in the tied product market; and (4) a not insubstantial amount of interstate commerce in the tied product is affected." *Sports Racing Servs., Inc. v. Sports Car Club of Am., Inc.*, 131 F.3d 874, 886 (10th Cir. 1997). Thus, the showing that Suture Express will need to make, and that the Defendants will attempt to rebut, is that the Defendants have sufficient economic power to restrain trade in the med-surg category.

Information regarding Medline's customers, sales, profits and market share would likely assist in establishing the Defendants' market power. However, certain of the Parties' requests ask for very detailed information about individual transactions between Medline and its customers that has little apparent relevance or legitimate usefulness. For example, Suture Express's document request 19 asks for invoice records for all sales of med-surg products to customers for the period January 1, 2006 to the present, including details for each transaction regarding, among other things, the dates of sales, names of customers, type and quantity in units of products sold, the locations to which products were shipped or delivered, the total price paid, the cost Medline paid to manufacture or acquire the product, and the applicable distribution fee or markup. Defendants have made similarly detailed requests. The potential harm to Medline of disclosing such information outweighs its marginal relevance or necessity to fair adjudication of the Underlying Litigation.

Furthermore, the requested information regarding sales, profits, and market share is not necessary, as Medline has offered to provide aggregate sales information sufficient to calculate Medline's market share.[6] Thus, the Parties have not demonstrated that their broad subpoena

---

[6] The Court also notes that similar data can be obtained through other sources—specifically, trade associations that publish market share data on an annual basis. (*See* Abrams Supp. Aff. at ¶ 4(c), Dkt. No. 25-1.)

requests are truly necessary to establishing Defendants' market power.[7] *See e.g., Concord Boat Corp.*, 1996 WL 705260, at \*3 (denying motion to compel production of pricing information from a competitor where requested information was available through other means).

On the other hand, the damage that Medline could suffer as a result of disclosing this information is severe. To take just a few examples, the subpoenas demand production of the names of all of Medline's customers from 2006 to the present (Defendants' document request 1(b), Suture Express's document request 1)); the magnitude of Medline's sales to each of these customers over the same time frame (Defendants' document request 1(g), Suture Express's document request 19); Medline's profit margins (Defendants' document request 1(h), Suture Express's document request 17); how Medline determines its pricing (Defendants' document request 9); and documents relating to Medline's business plans and strategies. (*Id.*) If Medline were to comply with these requests, it would be providing its most confidential and commercially sensitive information to its direct competitors. This fact alone counsels against allowing discovery of these materials. *See, e.g., Ultimate Timing, LLC v. Simms*, 3:09-mc-6, 2009 WL 1148056, at \*2 (S.D. Ind. Apr. 28, 2009) ("[I]n a circumstance involving direct competitors, caution must be used in pre-litigation discovery devices to limit the potential that discovery directed to non-parties is used for the improper purpose of obtaining proprietary information of the competitor."); *Greater Rockford Energy & Tech. Corp. v. Shell Oil Co.*, 138 F.R.D. 530, 536 (C.D. Ill. 1991) ("Courts have presumed that disclosure of sensitive information to competitors is more harmful than disclosure to a noncompetitor."). Any disclosure of this

---

[7] At oral argument, the Parties insisted that they need the more granular data requested in their subpoenas in order to "match up across data sets what . . . customers are purchasing and from whom and when." (8/28/2014 Tr. at 13:5-12.) The Court disagrees. Medline is not a defendant in the Underlying Litigation, and Suture Express does not allege an industry-wide conspiracy in that action. It is only marginally relevant—if it is relevant at all—how customers responded to bundling arrangements instituted by Medline.

information could lead to the Parties adjusting their own prices and services in an effort to underbid Medline in the med-surg marketplace and lure away current Medline customers. (*See* Abrams Aff. ¶ 15, Dkt. No. 4-1.)

The Parties contend that the Protective Order provides sufficient protection for Medline's business interests. But even with a protective order in place, there is always the risk of inadvertent disclosure of confidential material, despite the best intentions of the Parties. Furthermore, the Protective Order does not address the use of confidential material "at any trial or hearing." (Prot. Order at ¶ 14(A), Dkt. No. 18-4.) Assuming the case proceeds to the summary judgment stage or trial, there is also a presumption in favor of access to judicial records that courts in the Tenth Circuit have been willing to enforce, even when the parties agree that public access should be restricted. *See, e.g., JetAway Aviation, LLC v. Bd. of Cnty. Comm'rs of Cnty. of Montrose, Col.*, 754 F.3d 824, 826 (10th Cir. 2014) ("'[T]he parties cannot overcome the presumption against sealing judicial records simply by pointing out that the records are subject to a protective order in the district court.'") (quoting *Helm v. Kansas*, 656 F.3d 1277, 1292 (10th Cir. 2011)); *see also Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1241 (10th Cir. 2012) (denying unopposed motions to file material under seal where these materials were "at the center of [the] controversy.")

Additionally, the Parties concede that they intend to provide any confidential information produced by Medline to the Parties' own expert witnesses in the Underlying Litigation. (*See* Mot. to Quash at 10, Dkt. No. 18; Defs.' Resp. at n.2, Dkt. No. 21.) The Court recognizes that "[o]nce an expert has digested this confidential information, it is unlikely the expert will forget." *The Stanley Works*, 1992 WL 229652, at *5 (quoting *Greater Rockford*, 138 F.R.D. at 537)). In short, given the potentially ruinous consequences of disclosure, the Court finds that the existence

of the protective order is not a license for the Parties to obtain all of the confidential material that they seek, especially given its marginal relevance and Medline's proposed production of aggregated sales data. *See e.g., Concord Boat Corp.,* 1996 WL 705260, at *3 (" [I]t is established that even when a protective order has been entered, a party requesting disclosure of confidential information must make a strong showing of need, especially when confidential information from a nonparty is sought.") (internal quotation marks omitted); *Greater Rockford*, 138 F.R.D. at 538 ("There is a constant danger inherent in disclosure of confidential information pursuant to a protective order.") (quoting *Litton Indus. v. Chesapeake & Ohio Ry.*, 129 F.R.D. 528, 531 (E.D. Wis. 1990)).

To satisfy the legitimate needs of the Parties in the Underlying Litigation, the Court orders Medline to produce to the Parties its aggregate sales data for the years 2006 to present. Because the Court finds that this information will be sufficient to meet Parties' needs without undue burden or harm to Medline, the Court grants the Motion to Quash with respect to Defendants' document requests 1, 4, 5, 6, 7, 8, 9, 10, 11, and 12 and deposition topic 2. For the same reason, the Court grants the Motion to Quash and denies the Motion to Compel with respect to Suture Express's document requests 12, 17, 18, and 19, and deposition topic 3. The Court also grants in part the Motion to Quash with respect to Defendants' deposition topic 5. That deposition topic, as written, asks Medline to designate a witness pursuant to Rule 30(b)(6) to testify regarding: "Competitive conditions in the distribution of medical and surgical supply products, including Medline's competitive position, market share, and the means Medline uses to compete with other suppliers of any medical and surgical supply products." For the reasons stated above, the Court will limit Medline's obligation under the subpoena to designating a Rule

30(b)(6) witness to testify regarding the aggregate sales data that Medline shall produce pursuant to this Order.

### B. Documents and Information Relating to Medline's General Contracts and Pricing Practices

The Parties' subpoenas also seek information regarding the terms of Medline's contracts with its customers, including pricing. The Parties each have offered to limit their document requests. Defendants now have agreed to limit their requests to only Medline's current and other reasonably accessible contracts with GPOs, as well as a random sample of its contracts with acute care providers. (Defs.' Resp. at 16, Dkt. No. 21.) Similarly, Suture Express has agreed to limit its requests to: (i) all agreements or contracts between Medline and any GPO concerning the sale or distribution of med-surg products; (ii) lists of all customers who purchase med-surg products pursuant to a master or global agreement or with any GPO (including information about the customer's GPO affiliation); and (iii) a random sample of fifty individual or local agreements or contracts between Medline and its customers concerning the sale or distribution of med-surg products. (Mot. to Compel at 14-15, Dkt. No. 18.)

Medline's contractual terms—specifically, whether it engages in the same sort of tying arrangements that are allegedly used by the Defendants—are relevant to the Underlying Litigation. Suture Express is attempting to show that Defendants violated the Sherman Act via illicit tying under the "rule of reason" approach. Under that shifting burden of proof,

> the plaintiff bears the initial burden of showing that an agreement had a substantially adverse effect on competition. If the plaintiff meets this burden, the burden shifts to the defendant to come forward with evidence of the procompetitive virtues of the alleged wrongful conduct. If the defendant is able to demonstrate procompetitive effects, the plaintiff then must prove that the challenged conduct is not reasonably necessary to achieve the legitimate objectives or that those objectives can be achieved in a substantially less restrictive manner. Ultimately, if these steps are met, the harms and benefits must

> be weighed against each other in order to judge whether the challenged behavior is, on balance, reasonable.

*Law v. Nat'l Collegiate Athletic Ass'n*, 134 F.3d 1010, 1019 (10th Cir. 1998) (citations omitted). To the extent Medline promotes its own discounts, rebates, or other practices that create an incentive for customers to purchase larger "packages" of med-surg products, these practices bear directly on the reasonableness and anticompetitiveness of such practices more generally, and thus are relevant to the rule of reason analysis. Furthermore, information about Medline's contractual terms and the customers to which those terms apply is probative of the extent to which the challenged bundling of med-surg products forecloses competition. *See, e.g., R.J. Reynolds Tobacco Co. v. Philip Morris Inc.*, 199 F. Supp. 2d 362, 388 (M.D.N.C. 2002) ("A plaintiff makes out a *prima facie* case of substantial foreclosure by demonstrating first that a significant percentage of the relevant market is foreclosed by the provision challenged.").

Nevertheless, the Court will protect from production certain aspects of the requested contracts. Medline notes that the disclosure of its contracts could be "devastating for Medline's business," as it would allow the Parties to "contact current Medline customers and quote lower prices with different terms and conditions in an effort to obtain Medline's customers['] business." (Abrams Aff. ¶ 11, Dkt. No. 4-1.) To limit the risk associated with disclosure, Medline may redact from its production information that would allow the Parties to identify Medline's former, current, or potential customers.

Medline also objects to these requests as unduly burdensome, claiming that it maintains contractual relationships with tens of thousands of entities. Medline additionally notes that most of its contracts contain confidentiality agreements, and thus it would need to obtain consent from the contracting parties before producing the contracts. (*Id.* ¶ 10.) However, the Court finds that the Parties' proposed narrowing of their requests provides a reasonable accommodation to

Medline's concerns. Medline thus shall be required to produce only (1) Medline's current contracts with GPOs; and (2) a random sample of fifty individual or local agreements or contracts between Medline and its customers concerning the sale or distribution of med-surg products. Medline has conceded that there are only eight GPO contracts, so production of these contracts should not be particularly burdensome. (Abrams Supp. Aff. ¶ 3(c), Dkt. No. 25-1.) And although Medline represents that it would need to conduct "an extensive legal and document review" in order to assemble a list of customers who purchase med-surg products pursuant to a GPO contract, as requested by Suture Express, this information is of limited relevance and so Medline will not be required to produce it. Finally, although Medline's concerns regarding the confidentiality of these contracts remains an issue, the need to obtain consent from the contracting parties for production pursuant to these requests as narrowed does not constitute an undue burden. The Parties will also be permitted to depose a Medline representative pursuant to Federal Rule of Civil Procedure 30(b)(6) regarding the terms of the contracts that Medline produces. Accordingly, the Court denies the Motion to Quash and grants the Motion to Compel with respect to Suture Express's deposition topic 1.

However, the Court grants the Motion to Quash and denies the Motion to Compel with respect to Suture Express's document request 7 and deposition topic 2. Suture Express's document request 7 asks for documents comparing Medline's contractual terms to those offered by other distributors, while Suture Express's deposition topic 2 asks Medline to provide a corporate representative to testify regarding the negotiations of Medline's contracts. Although factual information regarding tying arrangements used by Medline would be relevant to the Underlying Litigation, Suture Express's document request 7 and deposition topic 2 seek to obtain confidential information regarding the decision-making process by which Medline develops its

contractual provisions and interacts with its customers. The Court can discern no legitimate use for such information. *See, e.g., Spartanburg Reg'l Healthcare Sys. v. Hillenbrand Indus., Inc.*, No. 1:05-MC-107, 2005 WL 2045818, at *4 (W.D. Mich. Aug. 24, 2005) (granting motion to quash to the extent defendant in antitrust action asked for production of documents by non-party competitor that would reveal non-party's "thought processes" regarding developing, pricing and marketing its products).

C.    **Medline's Tying Practices**

The subpoenas include a number of requests relating to tying practices in which Medline engages through price concessions, penalties, or other means. Once again, the Parties have offered to limit their respective requests. Suture Express has proposed limiting its request to searching and reviewing the e-mails, electronic files, and paper files of three agreed-upon Medline custodians. (Memo. in Supp. of Mot. to Compel at 15, Dkt. No. 18.) Defendants have proposed limiting Medline's search obligations to its live database, any other central files or databases, and the files of two to three custodians most likely to have documents responsive to each request. (Defs.' Resp. to Mot. to Quash at 16, Dkt. No. 21.)

As discussed above, any actual tying practices used by Medline are relevant to the subject matter of the Underlying Litigation. Accordingly, the Court denies the Motion to Quash and grants the Motion to Compel with respect to Suture Express's document request 8, which asks for documents relating to Medline's actual tying agreements. Similarly, the Court grants the Motion to Quash only in part with respect to Defendants' document request number 3. That request asks for "[d]ocuments sufficient to identify Medline's actual or contemplated" tying arrangements. As discussed above, any actual tying arrangements used by Medline would be relevant and necessary to the underlying litigation. However, the relevance of contemplated, but

as of yet unenacted, tying arrangements outweighs the burden or potential prejudice to Medline in producing documents responsive to this request. *See Spartanburg Reg'l Healthcare Sys.,* 2005 WL 2045818, at *4. Consequently, the Court grants the Motion to Quash with respect to documents that discuss potential tying agreements that were never enacted. Medline will produce documents responsive to Defendants' document request 3, as limited above, and Suture Express's document request 8 from three Medline custodians that will be chosen by agreement of the Parties and Medline. Medline may redact any information that would allow the Parties to identify Medline's former, current, or potential customers.

The remaining document requests relating to Medline's tying arrangements ask for documents regarding Medline's internal deliberations and analysis regarding such arrangements. For example, Suture Express's document request 9 asks for documents regarding Medline's "decision whether or not to enforce" tying arrangements; Suture Express's document request 10 asks for "[a]ll documents tracking or monitoring Customer compliance" with Medline tying arrangements; and Suture Express's document request 11 asks for "[a]ll documents analyzing or concerning the potential, possible or actual sales and revenue effects" of Medline's tying arrangements. These sorts of requests seek to intrude into the province of the internal decision-making process by which Medline formulates its sales policies and pricing structure. Accordingly, the Court grants the Motion to Quash and denies the Motion to Compel with respect to Suture Express document requests numbers 9, 10, 11, 13, and 15.

The Court denies the Motion to Quash with respect to Defendants' deposition topic 4. That request asks for Medline's pricing strategies specifically relating to any tying arrangements enacted by Medline. As discussed above, any tying arrangements used by Medline would be quite relevant to the Underlying Litigation. However, the Court grants the Motion to Quash and

denies the Motion to Compel with respect to Suture Express's deposition topics 4, 5, and 6, and grants the Motion to Quash Defendants' deposition topic 3. These deposition topics call for testimony regarding Medline's internal decision-making and customer communications with respect to tying arrangements. For the reasons stated above, Medline's internal decision-making processes and communications with customers are not sufficiently necessary to the Underlying Litigation to outweigh Medline's confidentiality interest in this information. The Court further fails to see how Medline's opinions regarding the desirability of tying arrangements have any bearing on the allegations in the Underlying Litigation. If the Parties wish to introduce opinions about the anticompetitive and procompetitive effects of tying arrangements in the med-surg industry, then they should retain an industry expert to provide such testimony. However, the Parties may ask a Medline corporate representative questions about documents relating to actual tying arrangements produced in response to Suture Express's document request number 8 and Defendants' document request number 3. Accordingly, Medline shall produce a corporate representative pursuant to Rule 30(b)(6) to testify regarding actual tying agreements used by Medline in its sale of med-surg products.

### D.    Medline's Communications With and About Its Competitors

The final category of information sought by the Parties consists of Medline's analyses of its competitors' activities, as well as communications between Medline and its competitors and other Medline documents that refer to its competitors. Here, again, Defendants have offered to limit Medline's search obligations to its live database, any other central files or databases, and the files of two or three custodians most likely to have responsive documents. (Defs.' Resp. at 16, Dkt. No. 21.) Similarly, Suture Express has agreed that Medline may limit its search for

responsive documents based on targeted search terms and three key Medline custodians. (Mot. to Compel at 15, Dkt. No. 18.)

The Motion to Quash is denied with respect to Defendants' document requests 14 and 15. These requests seek communications between Medline and Suture Express regarding the sale of med-surg products and documents referring to plans for Medline to affiliate with other sellers of suture and endo products, including Suture Express. Medline shall produce such communications and other documents, but only to the extent that they relate to Suture Express. To the extent Defendants' document request 15 seeks information about Medline's plans to affiliate with businesses other than Suture Express, it need not respond. Suture Express is the plaintiff in the Underlying Litigation. Thus, its communications with a third-party witness such as Medline about the subject matter of the litigation—particularly communications that reflect Suture Express's efforts to counter the alleged anticompetitive conduct by Defendants—is relevant and necessary to the Underlying Litigation. Furthermore, these requests are sufficiently narrow that compliance should not impose an undue burden on Medline. Accordingly, Medline shall collect documents responsive to these requests from three key Medline custodians that will be agreed upon by Defendants and Medline. To reduce the risk of harm to Medline as a result of producing the documents, Medline may redact any information that would allow the Parties to identify Medline's former, current, or potential customers. For similar reasons, the Motion to Quash is denied as to Defendants' deposition topic 1, which asks for a corporate representative to testify regarding Medline's relationship with Suture Express, including any agreement between Medline and Suture Express to "collaborate in the offering or sale of medical and surgical supply products and suture and endomechanical products to customers."

However, the Motion to Quash is granted (and the Motion to Compel denied) as to Suture Express's deposition topic 7, which asks for testimony regarding "[t]he effect of Suture Express's entry into the markets for Suture Products and Endo Products on Medline, and reactions to Suture Express's entry that Medline considered or adopted." Medline will not be required to disclose to the Parties its own analyses of Suture Express's impact on the market or its reaction to it. As Medline's conduct is not at issue in the Underlying Litigation, such information has marginal relevance to the Underlying Litigation, at best. As with other subpoena requests that seek information regarding Medline's internal deliberations and analysis, Medline will not be required to disclose this information.

Medline also will not be required to produce information in response to Defendants' document request number 13. That request asks for "[a]ll documents that contain references to Cardinal, [O&M], or any other distributor of any medical and surgical supply products or services, including sutures and endomechanical products." Although this request may turn up some documents pertaining to the Underlying Litigation, it would also sweep in a large number of documents with little to no relevance. Because documents responsive to Defendants' document request number 13 would be largely irrelevant to the Underlying Litigation, and those responsive documents that are relevant would likely be covered by other requests, the Court grants the Motion to Quash it.

Finally, the Court denies the Motion to Quash and grants the Motion to Compel with respect to Suture Express's deposition topic 8, which asks for testimony regarding Medline's knowledge of Defendants' use of tying provisions. This topic is relevant to the Underlying Litigation and sufficiently narrow that it is unlikely to cause undue burden to Medline. Suture Express's document request 14 asks for similar information but is overbroad as written. It asks

for "[a]ll documents concerning any pricing offered by other distributors or competitors in the distribution of Med-Surg Products" that is dependent on tying agreements. Such a request is only relevant with respect to the Parties to the Underlying Litigation, and thus the Court grants the Motion to Quash in part: Medline shall produce documents responsive to Suture Express's document request 14, but only to the extent the documents pertain to tying arrangements used by the Parties. Medline shall collect documents responsive to this request, as narrowed, from three key Medline custodians that will be agreed upon by Suture Express and Medline. Medline may redact any information contained in responsive documents that would allow the Parties to identify Medline's former, current, or potential customers.

## III.    Medline's Request for Cost-Shifting

In its Motion to Quash, Medline also asks the Court to order the Parties to bear some portion of the cost it ultimately incurs in responding to their subpoenas. However, Medline has not provided any estimate of the amount of those costs, nor has it specified the types of costs that it expects to incur in gathering and producing the requested information. Accordingly, the Court denies Medline's request to shift all or some of the cost of production to the Parties, without prejudice. Medline may file a formal motion detailing the costs associated with complying with this Memorandum Opinion and Order after Medline and the Parties have reviewed and digested the ruling.

## **CONCLUSION**

For the reasons set out above, the Court grants in part and denies in part Medline's Motion to Quash (Dkt. No. 1) and Suture Express's Motion to Compel (Dkt. No. 16). Specifically, the Court:

1.    ORDERS Medline to produce aggregate sales data for the years 2006 to present.

2.	GRANTS the Motion to Quash with respect to Defendants' document requests 1, 4, 5, 6, 7, 8, 9, 10, 11, 12, and 13; and Defendants' deposition topics 2 and 3.

3.	GRANTS the Motion to Quash and DENIES the Motion to Compel with respect to Suture Express's document requests 1, 2, 5, 6, 7, 9, 10, 11, 12, 13, 15, 16, 17, 18, 19; and Suture Express's deposition topics 2, 3, and 7.

4.	DENIES in part the Motion to Quash Defendants' deposition topic 5 and requires Medline to designate a corporate witness pursuant to Federal Rule of Civil Procedure 30(b)(6) to testify regarding the aggregate sales data that Medline has been ordered to produce.

5.	DENIES the Motion to Quash and GRANTS the Motion to Compel with respect to Suture Express's document requests 3 and 4, and DENIES the Motion to Quash with respect to Defendants' document request 2. As discussed above, Medline shall fulfill these document requests by producing (1) all current GPO contracts providing for the sale or distribution of med-surg products; and (2) a random sample of fifty individual or local agreements or contracts between Medline and its customers concerning the sale or distribution of med-surg products.

6.	DENIES the Motion to Quash and GRANTS the Motion to Compel with respect to Suture Express's deposition topic 1. Medline shall designate a corporate representative pursuant to Federal Rule of Civil Procedure 30(b)(6) to testify regarding the documents produced pursuant to paragraph 5 above.

7.	DENIES the Motion to Quash and GRANTS the Motion to Compel with respect to Suture Express's document request 8, and GRANTS in part the Motion to Quash with respect to Defendants' document request 3. Medline shall produce documents relating to its actual tying arrangements in the sale and distribution of med-surg products. Medline shall only be obligated

to produce such documents from a total of three key custodians agreed upon by the Parties and Medline.

8.     DENIES the Motion to Quash with respect to Defendants' deposition topic 4. Medline shall designate a corporate representative pursuant to Federal Rule of Civil Procedure 30(b)(6) to testify regarding Medline's actual tying arrangements in the sale and distribution of med-surg products.

9.     GRANTS the Motion to Quash and DENIES the Motion to Compel with respect to Suture Express's deposition topics 4, 5, 6, and 7. As discussed above, however, Medline shall designate a corporate representative pursuant to Federal Rule of Civil Procedure 30(b)(6) to testify regarding Medline's actual tying arrangements in the sale and distribution of med-surg products.

10.     DENIES the Motion to Quash with respect to Defendants' document requests 14 and 15. Medline shall produce documents responsive to these requests collected from a total of three key custodians agreed upon by Defendants and Medline.

11.     DENIES the Motion to Quash with respect to Defendants' deposition topic 1. Medline shall designate a corporate representative pursuant to Federal Rule of Civil Procedure 30(b)(6) to testify regarding this topic.

12.     DENIES the Motion to Quash and GRANTS the Motion to Compel with respect to Suture Express's deposition topic 8. Medline shall designate a corporate representative pursuant to Federal Rule of Civil Procedure 30(b)(6) to testify regarding this topic.

13.     GRANTS in part the Motion to Quash and GRANTS in part the Motion to Compel with respect to Suture Express's document request 14. Medline shall produce documents in which it discusses its knowledge of tying arrangements used by the Parties in the sale or

distribution of med-surg products. Medline shall collect these documents from three custodians agreed upon by Suture Express and Medline.

14.     DENIES without prejudice Medline's Motion to Quash to the extent it seeks the costs of complying with the Parties' subpoenas.

15.     DENIES the Motion to Strike (Dkt. No. 26).

In complying with this Memorandum Opinion and Order, Medline shall be permitted to designate any of the documents and testimony that it provides to the Parties pursuant to the subpoenas as "Highly Confidential" under the Protective Order entered in the Underlying Litigation, and the Parties shall not allow any of their in-house attorneys to review such documents and testimony. Also, to reduce the risk of harm to Medline in producing these documents, Medline may redact any information contained in responsive documents that would allow the Parties to discern the identity of Medline's former, current, or potential customers. Medline and the Parties shall strictly comply with Local Rule 37.2 prior to seeking additional relief from the Court.

ENTERED:

Dated: November 18, 2014

Andrea R. Wood
United States District Judge